**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| DAVE MOLLOY, derivatively on behalf of RAYONIER, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>PAUL G. BOYNTON, NANCY LYNN WILSON, HANS VANDEN NOORT, C. DAVID BROWN, II, MARK E. GAUMOND, JAMES H. MILLER, THOMAS I. MORGAN and RONALD TOWNSEND,<br><br>    Defendants,<br><br>  and<br><br>RAYONIER INC., a North Carolina Corporation,<br><br>    Nominal Defendant. | Civil Action No.<br>3:17-cv-01157-TJC-MCR |

**PLAINTIFF'S UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF DERIVATIVE SETTLEMENT AND**
**MEMORANDUM OF LEGAL AUTHORITY IN SUPPORT**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND .......................................... 4

    A.      Stockholders Make Litigation Demands on the Board ............................ 4

    B.      Certain of the Settling Parties Attend the First Mediation ...................... 5

    C.      Stockholders' Counsel Receive and Review 1.5 Million Pages of
        Documents ................................................................................................ 5

    D.      Certain of the Settling Parties Attend the Second Mediation and Continue
        to Engage in Settlement Discussions Thereafter .................................... 6

    E.      Plaintiff Files the Action ......................................................................... 7

    F.      The Settling Parties Continue Their Arm's-Length Settlement Discussions
        and Reach an Agreement-in-Principle ...................................................... 8

    G.      The Settlement Confers Substantial Benefits Upon Rayonier ................. 8

        1.      Comprehensive Written Inventory Policy ................................... 9

        2.      Disclosure Committee ................................................................ 10

        3.      Audit Committee ......................................................................... 10

        4.      Whistleblower Hotline ................................................................ 11

        5.      Director and Compliance Education ........................................... 11

        6.      Senior Manager of Internal Controls ......................................... 11

        7.      Enhanced Review of Inventory, Depletion and Harvest Schedule .......... 11

        8.      Changes to Compliance Procedure ............................................. 12

        9.      Changes to Accounting and Audit Procedures .......................... 12

    H.      The Stockholders, Rayonier and its Insurers Mediate and Agree to an
        Appropriate Amount of Attorneys' Fees and Expenses ........................ 12

III.    THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE
    PROPOSED SETTLEMENT ........................................................................... 13

A.     The Discontinuance or Settlement of Derivative Claims Requires Court Approval ....................................................................................................... 13

B.     The Standard for Preliminary Approval ................................................. 14

C.     Preliminary Approval of the Settlement Is Proper and Notice of the Settlement Should Be Ordered.................................................................. 15

       1.     Collusion Is Absent from the Settlement ................................... 15

       2.     The Stage of the Proceedings.................................................... 16

       3.     The Likelihood of Success........................................................ 17

       4.     The Range of Possible Recovery .............................................. 19

       5.     The Complexity, Expense and Likely Duration of the Action ................. 20

IV.     THE NOTICE SATISFIES DUE PROCESS AND RULE 23.1 ..................................... 22

V.     PROPOSED SCHEDULE OF EVENTS ........................................................ 23

VI.     CONCLUSION........................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apollo Group, Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2008 WL 3072731 (D. Ariz. Aug. 4, 2008) .............................21

*Armstrong v. Bd. of Sch. Dirs.*,
616 F.2d 305 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) ...............................................................................................3, 13

*Bell Atl. Corp. v. Bolger*,
2 F.3d 1304 (3d Cir. 1993).........................................................................................................19

*Bennet v. Behring Corp.*,
737 F.2d 982 (11th Cir. 1984) ..................................................................................13, 15, 16

*Berkey Photo, Inc. v. Eastman Kodak Co.*,
603 F.2d 263 (2d Cir. 1979).....................................................................................................21

*Cohn v. Nelson*,
375 F. Supp. 2d 844 (E.D. Mo. 2005).......................................................................14, 18, 19

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ..............................................................................................13, 19

*In re Corrugated Container Antitrust Litig.*,
659 F.2d 1322 (5th Cir. 1981) ................................................................................................20

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977) ..........................................................................................15, 17

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) .....................................16

*Figueroa v. Sharper Image Corp.*,
517 F. Supp. 2d 1292 (S.D. Fla. 2007) ..................................................................................15

*Fla. Trailer & Equip. Co. v. Deal*,
284 F.2d 567 (5th Cir. 1960) ..................................................................................................18

*Fresco v. Auto Data Direct, Inc.*,
No. 03-cv-61063, 2007 WL 2330895 (S.D. Fla. May 14, 2007)...............................................3

*Gregg v. U.S. Indus., Inc.*,
887 F.2d 1462 (11th Cir. 1989) ...............................................................................................21

*Johansen v. Combustion Eng'g, Inc.*,
   170 F.3d 1320 (11th Cir. 1999) ........................................21

*Maher v. Zapata Corp.*,
   714 F.2d 436 (5th Cir. 1983) ........................................17, 19

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
   708 F.2d 1081 (7th Cir. 1983) ........................................21

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................17

*In re Michael Milkin & Assocs. Sec. Litig.*,
   150 F.R.D. 46 (S.D.N.Y. 1993) ........................................14

*In re Nasdaq Market-Makers Antitrust Litig.*,
   M.D.L. No. 1023, 1997 U.S. Dist. LEXIS 20835 (S.D.N.Y. Dec. 31, 1997)........................14

*Nolan v. Integrated Real Estate Processing LP*,
   No. 08-cv-642-J-34HTS, 2009 U.S. Dist. LEXIS 136890 (M.D. Fla. Sept. 9,
   2009) ........................................14

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................18

*In re PMC-Sierra, Inc. Derivative Litig.*,
   No. 06-5330, 2010 U.S. Dist. LEXIS 5818 (N.D. Cal. Jan. 26, 2010)........................22

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
   390 U.S. 414 (1968)........................................20

*In re Rambus Inc. Derivative Litig.*,
   No. 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845 (N.D. Cal. Jan. 20,
   2009) ........................................22

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ........................................15

*In re State St. Bank & Trust Co. ERISA Litig.*,
   No. 07 Civ. 8488, 2009 U.S. Dist. LEXIS 100971 (S.D.N.Y. Oct. 28, 2009) ........................3, 4

*Sterling v. Stewart*,
   158 F.3d 1199 (11th Cir. 1998) ........................................13

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)........................................16

*Washington Bancorporation v. Said*,
    No. 88-3111 (RCL), 1989 U.S. Dist. LEXIS 7394 (D.D.C. June 23, 1989) ..........................14

**Statutes**

N.C. Gen. Stat. Ann. § 55-7-44..............................................................................................18, 20

**Other Authorities**

7 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 22.110 (4th ed.
    2009) ...................................................................................................................................13

Federal Rule of Civil Procedure 23.1 ...............................................................................13, 22, 23

Manual for Complex Litigation (Fourth) § 13.14 (2004)....................................................13

Manual for Complex Litigation (Third) § 23.14 (1995).......................................................3

Plaintiff Dave Malloy ("Plaintiff"), additional Rayonier stockholders John G. Bradley, Asif Mehdi, Donald Blanchard and Samuel Koenig (together with Plaintiff, the "Stockholders"), defendants Paul G. Boynton, C. David Brown II, Mark E. Gaumond, James H. Miller, Thomas I. Morgan, Ronald Townsend, Hans Vanden Noort, and Nancy Lynn Wilson (the "Individual Defendants"), and nominal defendant Rayonier Inc. ("Rayonier" or the "Company," and collectively, the "Settling Parties") have reached an agreement to settle the above-captioned stockholder derivative action (the "Action") and related litigation demands made by the Stockholders (the "Demands," and together with the Action, the "Litigation").  The terms of the proposed settlement (the "Settlement") are set forth in the Stipulation and Agreement of Settlement dated April 16, 2018 (the "Stipulation"), which is attached hereto as Exhibit 1.[1]  Plaintiff respectfully submits the following memorandum in support of his unopposed[2] motion for preliminary approval of the Settlement (the "Motion").

## I.      **INTRODUCTION**

This Action was brought by Plaintiff on behalf of and for the benefit of nominal defendant Rayonier, a forest products company, against certain of its former directors and executive officers (the Individual Defendants) for alleged breaches of fiduciary duties owed to the Company in connection with the alleged overstatement of Rayonier's merchantable timber inventory and overharvesting of its timberlands in the Pacific Northwest.  The Settlement is the result of hard-fought, arm's-length negotiations reached following two in-person mediation sessions with two

---

1.      Except as otherwise expressly provided below or as the context otherwise requires, all capitalized terms used in this memorandum of law shall have the definitions set forth in the Stipulation.

2.      Pursuant to Local Rule 3.01(g), counsel for Plaintiff conferred with counsel for Defendants. Defendants do not adopt all the arguments, statements or positions taken in this Motion by Plaintiff, but they do not oppose the relief sought in this Motion.

separate mediators, the exchange of nonpublic information, and months of negotiations between counsel for the Stockholders and the Company.  The claims are to be released in exchange for Rayonier's agreement, through its Board of Directors (the "Board"), to adopt and maintain a wide-ranging set of corporate governance reforms designed to prevent the recurrence of the wrongdoing alleged in the Litigation and to make Rayonier a better-governed company overall (the "Reforms").  *See* Stipulation § VI.2.  Specifically, the Settlement provides for the adoption of a comprehensive timber inventory policy setting forth the roles, responsibilities and reporting requirements of Rayonier's officers, directors and employees with respect to inventory management (the "Inventory Policy").  *Id.*  The Inventory Policy was developed with the substantial input and assistance of two timber industry experts retained by the Stockholders, who analyzed information provided by Rayonier and provided recommendations to improve the Company's timber inventory practices and policies.  The Reforms also include new and strengthened procedures that materially enhance, among other things, the duties and responsibilities of the Board, its Audit Committee, and Company management.  *Id.*  Rayonier and the Stockholders agree that the Settlement is in the best interests of and confers substantial benefits upon the Company and its stockholders.  *See id.* §§ II-III.

After negotiating the material terms of the Settlement, counsel for the Stockholders, Rayonier, and certain of its directors' and officers' liability insurance carriers (the "D&O Insurers"), with the assistance and oversight of Michelle Yoshida of Phillips ADR, reached an agreement at arm's length and in good faith on the amount of attorneys' fees and reimbursement of expenses to be paid to Stockholders' Counsel in recognition of the substantial benefits conferred upon the Company by way of the Settlement.  *Id.* §§ I, IV.5.1.  As a result of those negotiations, the D&O Insurers, on behalf of Defendants, agreed to pay an award of attorneys' fees and

reimbursement of expenses to Stockholders' Counsel in the amount of $1,995,000 (the "Agreed-Upon Fees"), subject to the approval of the Court.  *Id.*

In determining whether preliminary approval is warranted, the issue before the Court is whether the proposed Settlement is within a range of possible approval, such that notice of the proposed Settlement should be provided to the Company's stockholders and a Settlement Hearing should be scheduled for final approval of the Settlement.  *See Fresco v. Auto Data Direct, Inc.*, No. 03-cv-61063, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007); *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998)).[3]   At this point, the Court is not required to make an ultimate determination as to whether the Settlement should be finally approved, *i.e.*, whether the Settlement is fair, reasonable, and adequate; rather, "[p]reliminary approval is 'at most a determination that there is what might be termed "probable cause" to submit the [settlement] proposal to [shareholders] and hold a full-scale hearing as to its fairness.'"  *In re State St. Bank & Trust Co. ERISA Litig.*, No. 07 Civ. 8488, 2009 U.S. Dist. LEXIS 100971, at *14 (S.D.N.Y. Oct. 28, 2009) (quoting *In re Traffic Exec. Assoc.*, 627 F.2d 631, 634 (2d Cir. 1980)).

As discussed herein, the Settlement certainly meets the standard for preliminary approval and, therefore, Plaintiff respectfully submits that the Court should enter the proposed Preliminary Approval Order[4]: (i) granting preliminary approval of the Settlement as set forth in the Stipulation; (ii) approving the form and method of providing notice of the Settlement to the Company's

---

3.      *See also* Manual for Complex Litigation (Third) § 23.14 (1995) ("First, the court reviews the proposal preliminarily to determine whether it is sufficient to warrant public notice and a hearing.  If so, the final decision on approval is made after the hearing.").

4.      The proposed Preliminary Approval Order is attached to the Stipulation as Exhibit C and is being submitted concurrently herewith.

stockholders[5]; and (iii) scheduling a final Settlement Hearing for the Court to consider, among other things, (a) whether to finally approve the proposed Settlement and enter the proposed District Court Approval Order and Judgment[6] and (b) whether to approve the Agreed-Upon Fees to be paid to Stockholders' Counsel by the D&O Insurers.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Stockholders Make Litigation Demands on the Board

Rayonier is a publicly traded forest products company incorporated in North Carolina and headquartered in Yulee, Florida.  Stipulation § I.  In November 2014, Rayonier announced that it had improperly included in its publicly reported merchantable timber inventory timber located in restricted or environmentally sensitive areas and economically inaccessible swamplands.  Verified Stockholder Derivative Complaint and Demand for Jury Trial ("Complaint") (Doc. 1) ¶¶ 5-7; 80-85.  The Company further disclosed that, for approximately a decade, the average rate at which Rayonier harvested timber in the timberlands in the State of Washington exceeded the rate those timberlands could support on a long-term basis.  Plaintiff alleges that Rayonier was overharvesting by an average of 44% each year, despite the fact that it had been assuring stockholders that it was harvesting at sustainable levels.  *Id.; see also* ¶¶ 1; 40-43.  Between November 2014 and May 2015, the Stockholders made the Demands on the Board to investigate and take action against certain of the Company's current and former directors and executive officers, including the Individual Defendants, for allegedly breaching their fiduciary duties owed to Rayonier and committing other violations of law in connection the foregoing conduct.  *Id.* ¶ 120; Stipulation § I.

---

5.      The proposed Notice and Summary Notice are attached to the Stipulation as Exhibits D and E, respectively.

6.      The proposed District Court Approval Order and Judgment are attached to the Stipulation as Exhibits F and G, respectively.

The Board formed a Special Litigation Committee (the "SLC") to investigate the allegations set forth in the Demands. Stipulation § I.

After submitting their respective Demands, the Stockholders entered into a series of tolling agreements (the "Tolling Agreements") with Rayonier and the Board providing that the Stockholders would refrain from commencing derivative action(s) relating to the subject of the Demands until the occurrence of certain triggering events. *Id.* § I. Rayonier agreed to produce copies of documents and written discovery responses produced by Rayonier in a related federal securities class action captioned *In re Rayonier Inc. Securities Litigation*, No. 3:14-cv-01395-TJC-JBT, then pending in the United States District Court for the Middle District of Florida (the "Securities Action"). *Id.*

**B.     Certain of the Settling Parties Attend the First Mediation**

Pursuant to the Tolling Agreements, on April 7, 2016, certain of the Settling Parties participated in a joint mediation of the Demands and the Securities Action with Jed D. Melnick of JAMS in New York, New York. Stipulation § I. In advance of the mediation, the Stockholders made a comprehensive settlement demand on the Board and submitted a detailed mediation statement to the mediator. *Id.* Neither the Demands nor the Securities Action were resolved at the mediation. *Id.*

**C.     Stockholders' Counsel Receive and Review 1.5 Million Pages of Documents**

On May 20, 2016, this Court denied the defendants' motion to dismiss the amended complaint in the Securities Action, and thereafter the parties to the Securities Action commenced discovery. Stipulation § I. Pursuant to the Tolling Agreements, Rayonier provided the Stockholders with over 1.5 million pages of documents produced by Rayonier in the Securities Action, which counsel for the Stockholders reviewed and analyzed. *See id.*

**D.     Certain of the Settling Parties Attend the Second Mediation and Continue to Engage in Settlement Discussions Thereafter**

The last operative Tolling Agreement expired on March 1, 2017, and, therefore, the Tolling Agreements no longer prevented the Stockholders from filing derivative action(s) on behalf of Rayonier.   Stipulation § I.   Because they were scheduled to attend a mediation session the following week, however, the Company and the Stockholders did not believe it was necessary to enter into another tolling agreement at that time.   *Id.*   On March 6, 2017, certain of the Settling Parties and certain of the D&O Insurers participated in another mediation session simultaneously with a mediation of the Securities Action with the Honorable (Ret.) Layn R. Phillips ("Judge Phillips") of Phillips ADR in New York, New York.   *Id.*   In advance of this second mediation, the Stockholders submitted a detailed mediation statement to Judge Phillips, citing certain of the non-public documents that had been produced by the Company.   *Id.*   Although progress was made at this second mediation session, neither the Demands nor the Securities Action was resolved on that date.   *Id.*

Shortly thereafter, on March 13, 2017, the Company publicly announced that an agreement-in-principle had been reached to settle the Securities Action.   *Id.*   Between the March 6, 2017 mediation and November 27, 2017, the Settling Parties continued to engage in good faith, arm's-length negotiations regarding a potential resolution of the Demands.[7]   *Id.*

Specifically, in late March 2017, Rayonier responded to the Stockholders' 2016 settlement demand, and the Stockholders requested, and Rayonier provided, a summary of the Company's then-current practices relating to inventory management.   *Id.*   The Stockholders retained Donald Reimer, Ph.D. ("Dr. Reimer"), an expert in timber growth and yield analysis and sustainability

---

7.     Because progress was being made in these negotiations, the Stockholders and Rayonier did not enter into any further tolling agreements.   *Id.*

planning, and Kimberly Iles, Ph.D. ("Dr. Iles"), an expert in timber inventory techniques, of D.R. Systems NW, to assist in Stockholders' Counsel's analysis of information provided by Rayonier and to provide recommendations to improve Rayonier's timber inventory practices and policies in connection with the Settling Parties' negotiations. *Id.* Based on discussions with Drs. Reimer and Iles, the Stockholders made additional requests for information to Rayonier and Rayonier responded to such requests. On June 7, 2017, the Stockholders made a counterproposal to Rayonier. Over the next several months, the Settling Parties continued their arm's-length negotiations and exchanged multiple drafts of the proposed settlement terms.

### E.     Plaintiff Files the Action

On October 13, 2017, Plaintiff commenced the Action on behalf and for the benefit of nominal defendant Rayonier against the Individual Defendants relating to the alleged misconduct set forth in the Demands. Plaintiff's Complaint, which was in part based on and cited a number of the non-public documents produced by Rayonier pursuant to the Tolling Agreements, *see, e.g.*, Complaint ¶¶ 51-64; 65-71; 74; 88; 95-96, was filed under seal per the agreement of Plaintiff and Rayonier and subsequent Order of the Court. Doc. 1. The Complaint asserted claims against the Individual Defendants under North Carolina law[8] for alleged breaches of their fiduciary duties in connection with the alleged overstatement of Rayonier's merchantable timber inventory and overharvesting of the Company's timberlands. Compl. ¶¶ 122-131. It also asserts a claim for unjust enrichment against defendants Boynton, Vanden Noort and Wilson in connection with the compensation they received based on the allegedly inflated financial results. Compl. ¶¶ 132-135.

---

8.      Rayonier is incorporated under the laws of North Carolina. Compl. ¶ 14.

**F.    The Settling Parties Continue Their Arm's-Length Settlement Discussions and Reach an Agreement-in-Principle**

Following the filing of the Action, the Settling Parties continued to engage in good faith, arm's-length negotiations regarding a potential resolution of the Demands and the Action. Stipulation § I.  On November 27, 2017, the Settling Parties executed a term sheet memorializing the terms of an agreement (the "Term Sheet").  *Id.*  On November 30, 2017, certain of the Defendants filed an unopposed motion to stay the Action and all upcoming deadlines therein on account of the execution of the Term Sheet.  Doc. 19.  On December 6, 2017, the Court granted the motion and administratively closed the Action.  Doc. 22.  Thereafter, the Settling Parties began negotiating the terms of the Stipulation formally documenting the Settlement.  On February 22, 2018, the Rayonier Board, in the exercise of its business judgment, approved a settlement consistent with the terms of the Term Sheet, with any fee award to be paid by the D&O Insurers, as in the best interests of Rayonier and its stockholders.  Stipulation § I.

**G.    The Settlement Confers Substantial Benefits Upon Rayonier**

The Settlement obtained by the Stockholders is an excellent result, reached after extensive, arm's-length negotiations among the Settling Parties.  As set forth in the Stipulation, Rayonier has adopted or will adopt numerous compliance-related measures designed to address the alleged wrongdoing, improve Rayonier's processes to monitor timber inventory and related disclosures, including significant Board and Audit Committee oversight over the Company's timber inventory and compliance controls, and to make Rayonier a better-governed company overall.  Rayonier and the Stockholders agree that the Reforms provide a substantial benefit to Rayonier.  These Reforms include, among other things:

### 1.     Comprehensive Written Inventory Policy

The Board has agreed to adopt a comprehensive written Inventory Policy, attached as Exhibit A to the Stipulation, which substantially and meaningfully enhances the Company's current controls to monitor timber inventory, growth rates, and depletion rates, including significant communications to the Board concerning the Company's timber inventory monitoring. Stipulation § IV.2.1(a).  The Inventory Policy, which was developed with the substantial input of Drs. Reimer and Iles, requires that, among other things:

(a)     the Board be provided at least annually with information to ensure the reliability and validity of the Company's timber inventory monitoring, including, among other things, comparisons of past projections to current measurements and volumes, and confirmation that field work audits are readily available for review by an additional qualified party, at the discretion of the Board (Stipulation Exhibit A at 2);

(b)     the Company maintain procedures for the application of consistent, objective, and transparent standards across its U.S. operations in order to ensure the exclusion of non-merchantable inventory (*id.*);

(c)     the Board be provided with information concerning the verification of the roll-forward of timber inventory from the prior year, including: (i) external data used for growth estimates to ensure they are properly representative of Rayonier timberland; (ii) growth rates confirmed by comparison to growth rates and inventory levels; and (ii) explanation for any material variance in the roll-forward of timber inventory by the Director of the Company's Land Information Systems department (*id.* at 4);

(d)     the Company maintain policies to ensure that harvest cutout volumes are not used to adjust timber inventory (*id.* at 5-6);

(e)      the Board be presented annually with an extended harvest schedule, including graphics for the United States South and Pacific Northwest timberlands, for not less than 30 years (and preferably for a period equal to two rotations) (*id.*);

(f)      internal audit, at least annually, will test Rayonier's internal controls over timber inventory and depletion rates (*id.* at 8);

(g)      the Company use of external, independent sources for timber growth rates to verify roll-forward rates must be carefully justified so that they can be explained to the Board, Board committees, and the external auditor (*id.* at 9); and

(h)      adjustments to growth rates must be based on appropriate measurement data from Rayonier's stands, and should be made based on measurements periods of 5 or more years (*id.*).

## 2.      Disclosure Committee

Rayonier's Disclosure Committee will review the Company's reporting of merchantable timber inventory to ensure its accuracy.  Stipulation § IV.2.1(b).

## 3.      Audit Committee

The Board has agreed to revise the Charter of the Audit Committee as set forth in the redline attached as Exhibit B to the Stipulation.  Stipulation § IV.2.1(c).  Specifically, the Audit Committee's duties shall be enhanced to include, among other things: (i) responsibility for assisting the Board in overseeing the Company's disclosure controls and procedures and internal controls over financial reporting; (ii) periodic meetings in separate executive sessions with management (including the CFO and Chief Accounting Officer), the internal auditors and the independent auditors; and (iii) responsibility for the compensation and oversight of the work of the independent auditor (including resolution of disagreements between management and the

independent auditor regarding financial reporting), and the independent auditor shall report directly to the Audit Committee.  *Id.* § IV.2.1(c) & Exhibit B.

### 4.  Whistleblower Hotline

The Company shall continue to engage an independent, third-party supplier to provide and monitor a whistleblower hotline, which the Company will conspicuously and widely post on its website and elsewhere.  Stipulation § IV.2.1(d).  On a monthly basis, the supplier will report in writing to the Chair of the Audit Committee any whistleblower complaint the supplier has received.  *Id.*

### 5.  Director and Compliance Education

Directors shall be required to attend no less than two hours of continuing education per year on certain required topics.  Stipulation § IV.2.1(e). The senior compliance officer shall annually attend a compliance and ethics seminar.  *Id*. § IV.2.1(f).

### 6.  Senior Manager of Internal Controls

Management created a position (Senior Manager, Internal Controls) to provide additional oversight and ensure risks are appropriately evaluated and addressed.  Stipulation § IV.2.2(a).  As part of Rayonier's enhanced Inventory Policy, Rayonier shall ensure that this position is appropriately staffed going forward, and that the Senior Manager of Internal Controls works in consultation with the Land Information Systems ("LIS") department to evaluate Rayonier's processes and controls related to merchantable timber inventory.  *Id.*

### 7.  Enhanced Review of Inventory, Depletion and Harvest Schedule

The Director, LIS, and the Director of Accounting Operations (or persons with similar functions) now meet with the Audit Committee to discuss the annual timber report and the calculation of new depletion rates (including methods of inventory measurement and verification and large edits to inventory).  Stipulation § IV.2.2(b)(1).  The Company also now prepares a report

comparing harvest cutout to inventory, and if any variances are noted, a discussion with external auditors is held to discuss if any adjustments to timber inventory are appropriate.  *Id.* § IV.2.2(b)(2).  In addition, an extended harvest schedule for the Southern and Pacific Northwest regions is presented to the Board.  *Id.* § IV.2.2(b)(3).

### 8.   Changes to Compliance Procedure

The Ombudsman who serves as a confidential contact to provide guidance on issues relating to the Company's Code of Conduct and compliance obligations reports directly to the Audit Committee (instead of a management-led risk committee).  Stipulation § IV.2.2(c).  In addition, the Chief Compliance Officer must now report directly to the Audit Committee, and has authority to communicate personally with the Audit Committee promptly on any matter.  *Id.*

### 9.   Changes to Accounting and Audit Procedures

The Audit Committee now has enhanced duties that relate to the Company's internal audit function, including the requirement that the Audit Committee review and approve: (i) the purpose, authority, and organizational reporting lines; (ii) annual audit plan, budget, and staffing; and (iii) concurrence in the appointment and compensation of the director of internal audit.  Stipulation § IV.2.2(d).

### H.   The Stockholders, Rayonier and its Insurers Mediate and Agree to an Appropriate Amount of Attorneys' Fees and Expenses

With the material terms of the Settlement agreed to, the Settling Parties began negotiations regarding the attorneys' fees and expenses to be paid to Stockholders' Counsel in recognition of the substantial benefits conferred upon the Company as a result of the Settlement.  Unable to reach an agreement on their own, counsel for the Stockholders, Rayonier and certain of the D&O Insurers attended a full day mediation on March 13, 2018, in New York City with mediator Michelle

Yoshida of Phillips ADR.  At the conclusion of this mediation, the D&O Insurers, on behalf of Defendants, agreed to pay $1,995,000 to Stockholders' Counsel, subject to approval by the Court.

On March 15, 2018, the parties to the Action filed a Joint Status Report advising the Court that they were negotiating the Stipulation and expected that Plaintiff would file this Motion within 30 days.  Doc. 29.  On March 19, 2018, the Court entered an Order lifting the stay of the Action.  Doc. 30.

## III.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

### A.   The Discontinuance or Settlement of Derivative Claims Requires Court Approval

Federal Rule of Civil Procedure 23.1(c) provides that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval.  Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders."   Court approval of a derivative settlement involves two steps: (1) determining "whether the proposed settlement is 'within the range of possible approval'" such that notice of the settlement should be provided to class members; and (2) after such notice has been provided, holding a fairness hearing to determine whether the settlement is fair, reasonable and adequate.  *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d at 314 (quoting MANUAL FOR COMPLEX LITIGATION. at 57); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 205 (5th Cir. 1981); *see also* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14 (2004) (setting forth the approval procedure for settlement of a shareholder derivative action).[9]

---

9.     Federal courts considering whether to approve the settlement of a stockholder derivative action generally apply the same standards used in considering settlements of class actions.  7 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 22.110 (4th ed. 2009); *Sterling v. Stewart,* 158 F.3d 1199, 1203-04 (11th Cir. 1998) (applying *Bennet* factors in a derivative action).

**B.     The Standard for Preliminary Approval**

Thus, the purpose of preliminary approval is to determine whether to notify a company's stockholders of the proposed settlement and whether to proceed with a fairness hearing.  *See* MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.41, at 237 (1995) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . and appears to fall within the range of possible approval, the court should direct that notice . . . be given to the [shareholders] of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement."); *see also Nolan v. Integrated Real Estate Processing LP*, No. 08-cv-642-J-34HTS, 2009 U.S. Dist. LEXIS 136890, at *17 (M.D. Fla. Sept. 9, 2009) ("Although, the Court need not make a final determination of the fairness, reasonableness, and adequacy of the proposed settlement at this stage of the proceedings, the Court must make a preliminary finding that the proposed settlement is sufficiently fair, reasonable, and adequate on its face to warrant presentation to the class members.").

It is well-established that "the law favors and encourages the settlement" of complex litigation.  *In re Michael Milkin & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993). "Settlements of shareholder derivative actions are favored because of the notorious complexity of such litigation." *Washington Bancorporation v. Said*, No. 88-3111 (RCL), 1989 U.S. Dist. LEXIS 7394, at *3 (D.D.C. June 23, 1989); *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("Settlements of shareholder derivative actions are particularly favored because such litigation 'is notoriously difficult and unpredictable.'").  Thus, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to [plaintiff] and falls within the range of possible approval, preliminary approval should be granted." *In re Nasdaq Market-Makers Antitrust Litig.*, M.D.L. No. 1023, 1997 U.S. Dist. LEXIS 20835, at *22 (S.D.N.Y. Dec. 31, 1997).  As discussed

below, the Settlement certainly falls within the range of possible approval and therefore should be preliminarily approved.

### C.     Preliminary Approval of the Settlement Is Proper and Notice of the Settlement Should Be Ordered

A review of the requisite criteria for final approval of the Settlement further shows that preliminary approval of the Settlement is warranted   The Eleventh Circuit considers, *inter alia*, the following factors when reviewing a proposed settlement for approval:   (1) the absence of collusion between the parties; (2) the stage of the proceedings at which settlement was achieved; (3) the likelihood of success at trial; (4) range of possible recovery; and (5) the complexity, expense, and likely duration of the litigation.  *Bennet v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1311-16 (S.D. Fla. 2007).  The Settlement easily passes muster under these criteria.[10]

### 1.     Collusion Is Absent from the Settlement

The absence of collusion is a factor weighing heavily in favor of settlement approval.  *Bennet*, 737 F.2d at 986.   Here, there is no collusion in the Settlement of the Action.   The Settlement resulted from extensive arm's-length negotiations over many months.   Moreover, the Stockholders are represented by qualified counsel with many years of experience in litigating shareholder derivative (and other representative) actions and who have negotiated scores of other derivative settlements that have been approved by courts throughout the country and were assisted by two experts who advised on the industry-specific aspects of the Settlement.  *See Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) (stating that "the value of the assessment of able

---

10.     Courts also consider the "the substance and amount of opposition to the settlement" before granting final approval, *see Bennet*, 737 F.2d at 986, but this factor is properly considered after notice of a settlement has been provided to stockholders.

counsel negotiating at arm's length cannot be gainsaid"); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").  Likewise, Defendants are represented by counsel with a local and national reputation for the tenacious defense of complex civil matters.  Accordingly, counsel for the Settling Parties used their extensive and relevant experience in conducting good-faith negotiations, which involved two in-person mediation sessions with two different mediators and months of arm's-length negotiations, and ultimately led to the Settlement.  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008) (the use of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion.").  In addition, the negotiation of plaintiff's counsels' attorneys' fees was only begun (via a third formal mediation before Michelle Yoshida) after the Reforms had been negotiated and agreed to.  As there was no collusion between the Settling Parties, the Settlement should be preliminarily approved.

### 2.      The Stage of the Proceedings

In evaluating a proposed settlement, a Court should also consider the "stage of proceedings at which the settlement was achieved." *Bennet*, 737 F.2d at 986.  Settlement of the Action at this stage in the litigation will foreclose the substantial expense of continued litigation and trial preparation, the incalculable cost of time and attention diverted from the day-to-day business operations of the Company, and, of course, the burden to the Court of protracted and complex litigation.

While the Action itself is in the early stages of litigation, the Settling Parties are well-informed about the relevant facts due to the substantial litigation efforts that took place prior to the filing of the Action.  Before and after making the Demands, Stockholders' Counsel conducted extensive research and investigation into the Individual Defendants' alleged misconduct and the

corresponding alleged damages to the Company.  Stockholders' Counsel's investigation included, *inter alia*, (a) inspecting, reviewing and analyzing the Company's public filings with the SEC; (b) researching corporate governance issues; and (c) researching the applicable law with respect to the claims asserted in the Litigation and the potential defenses thereto.  Stipulation § II.  After making the Demands, Stockholders' Counsel negotiated the Tolling Agreements pursuant to which the Company ultimately produced over 1.5 million pages of documents relating to the allegations in the Demands.  *Id.* § I.  Stockholders' Counsel then reviewed and analyzed these documents, which were cited in both their 2017 mediation statement and the Complaint.  *Id.*

Having completed sufficient investigation to properly evaluate the Action on both a factual and legal basis, Stockholders' Counsel agreed to a favorable settlement for Rayonier, thus eliminating the substantial risk and uncertainty of continued litigation.  Accordingly, on this factor too, preliminary approval of the Settlement is warranted.  *See Cotton*, 559 F.2d at 1332 (finding that based upon informal discovery and investigation, plaintiffs "achieved the desired quantum of information necessary to achieve a settlement"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[f]ormal discovery is not a necessary ticket to the bargaining table" where the parties have sufficient information to make an informed decision about settlement).

### 3.      The Likelihood of Success

As in every complex case of this kind, Plaintiff faced formidable obstacles to recovery. *See, e.g.*, *Maher v. Zapata Corp.*, 714 F.2d 436, 458, 461 (5th Cir. 1983) (affirming approval of derivative settlement where further recovery "was problematical" and "did not outweigh the costs, both legal and otherwise").  North Carolina law provides that a court "shall dismiss a derivative proceeding on motion of the corporation if [a group of independent, disinterested directors] determines in good faith after conducting a reasonable inquiry upon which its conclusions are based that the maintenance of the derivative proceeding is not in the best interest of the

corporation."  N.C. Gen. Stat. Ann. § 55-7-44 ("Section 55-7-44").  By letter dated October 20, 2017, Rayonier's counsel notified Stockholders' Counsel that the SLC had advised the Board to refuse the Stockholders' Demands, and the Board accepted that recommendation.  Accordingly, if litigation of the Action were to continue, Plaintiff would face the difficult hurdle of a motion to dismiss pursuant to Section 55-7-44.

Even if the Complaint would have survived the motion to dismiss, many challenges to recovery would remain.  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("the odds of winning [a] derivative lawsuit [are] extremely small").  Defendants have denied, and continue to deny, any liability or wrongdoing with respect to any and all claims and contentions alleged in the Action.  *See* Stipulation § III.  Plaintiff would undoubtedly face motions for summary judgment; witnesses could suddenly become unavailable or be unable to recall critical information; or the trier of fact could react to the evidence in unforeseen ways. In these circumstances, "it is prudent to eliminate the risks of litigation to achieve specific certainty though admittedly it might be considerably less (or more) than were the case fought to the bitter end." *Fla. Trailer & Equip. Co. v. Deal*, 284 F.2d 567, 573 (5th Cir. 1960).

The relief obtained through the settlement is significant by any measure, and continued litigation creates a substantial risk of shareholders obtaining no recovery at all, while the settlement provides immediate, material benefits to Rayonier.  *See Cohn v. Nelson*, 375 F. Supp. 2d 844, 855 (E.D. Mo. 2005) ("[i]n assessing the Settlement, this Court must balance the benefits accorded to [the company] and its stockholders, and the immediacy and certainty of a substantial recovery for them, against the continuing risks of litigation").  For these reasons, this Court should preliminarily approve the Settlement.

### 4.      The Range of Possible Recovery

Determination of a "reasonable" settlement does not mean "establishing success or failure to a certainty."  *In re Corrugated Container*, 643 F.2d at 212 (quoting *Fla. Trailer & Equip. Co.*, 284 F.2d. at 571).  Rather, a "just result is often no more than an arbitrary point between competing notions of reasonableness." *Id.*   Here, the Settlement consists of the adoption and/or implementation of corporate governance Reforms that go to the heart of the issues of which the Stockholders complained and which will provide significant benefits to Rayonier and Current Rayonier Shareholders, demonstrably falling within the range of "reasonableness." *See Maher*, 714 F.2d at 454 (affirming settlement where derivative suit was a contributing factor in implementation of governance reforms); *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1311 (3d Cir. 1993) ("[d]espite the difficulties they pose to measurement, nonpecuniary benefits to the corporation may support a settlement"); *Cohn*, 375 F. Supp. 2d at 853 ("[c]ourts have recognized that corporate governance reforms such as those achieved here provide valuable benefits to public companies").  Stockholders' Counsel worked directly with Drs. Reimer and Iles – who reviewed Rayonier's relevant Board minutes and presentations, long range plans, documents related to timber inventory techniques and controls over reporting, harvest plans, and Rayonier's public statements related to its timber inventory and harvesting practices and levels – to carefully craft changes to the summary provided by Rayonier to create the Inventory Policy, which is the centerpiece of the Settlement.  As a result, Rayonier and its stockholders will benefit from the Settlement because the negotiated corporate governance Reforms will, *inter alia*, enable proper monitoring of the Company's inventory management and harvesting practices and provide greater oversight by the Board.

Further, even if Plaintiff were successful in establishing liability at trial, Plaintiff would face substantial risks in proving damages.  *See, e.g.*, *Maher*, 714 F.2d at 458, 461 (affirming

approval of derivative settlement where further recovery "was problematical" and "did not outweigh the costs, both legal and otherwise").  Plaintiff has avoided this uncertainty through the Settlement, which provides the certainty of a known benefit for Rayonier in the form of substantial corporate governance Reforms, while providing Rayonier with an opportunity for closure without the need for many more years of litigation.

### 5. The Complexity, Expense and Likely Duration of the Action

Another reason for a court to approve a settlement is the complexity, duration, and risks of further litigation.  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (a court must consider, *inter alia*, "the complexity, expense, and likely duration of such litigation"); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981) (noting immediate benefit of settlement and avoidance of costly and lengthy litigation).  Here, several factors make it more likely that absent Settlement, this Action would require additional large expenditures and years of litigation, with the significant risk that Rayonier could obtain results less beneficial than those provided by the Settlement, or no recovery at all.

First, as discussed above, Defendants would likely file a motion to dismiss pursuant to Section 55-7-44 on the grounds that the Board refused the Demands based on the recommendation of the SLC.  Prior to filing an opposition to such motion, Plaintiff would seek discovery into the independence, good faith and reasonableness of the SLC's investigation, including copies of all documents reviewed in connection with the SLC's investigation, as well as depositions of the SLC members.  *See* N.C. Gen. Stat. Ann. § 55-7-44(d).  If the motion to dismiss was denied, the Action would then proceed to discovery regarding the underlying merits of the case.  Conversely, if the motion to dismiss was granted, Plaintiff could either seek to amend the operative Complaint or appeal the Court's ruling.  Regardless of the outcome, Plaintiff, the Individual Defendants and the

Company would certainly incur additional expenses and any beneficial results for Rayonier would be further delayed.

If the Action proceeded to trial, such a trial would entail several weeks and involve the introduction of hundreds of exhibits dealing with financial matters, vigorously contested motions, and the expenditure of hundreds of thousands of dollars in additional out-of-pocket expenses.  A trial would necessarily involve a substantial drain on Company resources, including witness testimony in discovery and at trial, as well as usurp a significant amount of Company time.  A trial would also necessarily involve complex issues resulting in conflicting expert testimony, the outcome of which is by no means certain.  Thus, if there were further litigation and a trial, there is a risk that the Plaintiff might fail to convince the trier of fact of the merits of his case and that Defendants could obtain judgment in their favor.

Furthermore, any future trial judgment would still be subject to the continuing risks and vicissitudes of litigation, through possible appeals.  Even very large judgments, recovered after lengthy litigation and trial, can be greatly reduced or lost post-trial or on appeal.  *See, e.g.*, *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1340 (11th Cir. 1999) (affirming reduction of $45 million damages award to $4.35 million); *Gregg v. U.S. Indus., Inc.*, 887 F.2d 1462, 1477 (11th Cir. 1989) (affirming reduction of $18.5 million damages award to $2 million); *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 WL 3072731, at *6 (D. Ariz. Aug. 4, 2008) (overturning jury verdict of $277 million in favor of shareholders); *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983) (remanding $1.8 billion judgment for a new trial on damages, ultimately producing a dramatically smaller award); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial).

For these reasons, the Settlement deserves the Court's preliminary – and ultimately final – approval.  The Court should set a date for the Settlement Hearing and direct the parties to provide notice to stockholders of Rayonier as of the execution of the Stipulation ("Current Rayonier Stockholders") advising them of their right to be heard on the adequacy of the Settlement.

## IV.   THE NOTICE SATISFIES DUE PROCESS AND RULE 23.1

The Agreement provides for publication of (1) the Notice, as set forth in Exhibit D to the Stipulation, via the filing of a Form 8-K with the SEC, and (2) the Summary Notice, as set forth in Exhibit E to the Stipulation, to be published one time in *Investor's Business Daily*.  In addition Rayonier will also publish the Stipulation on an Internet page that the Company will create for that purpose, which will be accessible via a link on the "Investor Relations" page of the Company's website, the address of which will be stated in the Notice.  This method of publication has been found by numerous other courts to be sufficient to ensure adequate notice to shareholders.  *In re PMC-Sierra, Inc. Derivative Litig.*, No. 06-5330, 2010 U.S. Dist. LEXIS 5818, at *4 (N.D. Cal. Jan. 26, 2010) (providing for notice by publication in Investor's Business Daily and on company's website and filed with the SEC); *In re Rambus Inc. Derivative Litig.*, No. 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845, at *7 (N.D. Cal. Jan. 20, 2009) (approving settlement where notice was published on company website and in a press release and filed in a Form 8-K with the SEC).[11]

The proposed substance of the Notice and Summary Notice (collectively, the "Notices") is also sufficient.  The Notices provide information relating to: (i) the Settlement's terms; (ii) the date of the Settlement Hearing; and (iii) the protocol for Current Rayonier Stockholders to follow to

---

11.    Unlike for class actions, Fed. R. Civ. P. 23.1(c) does not require individual notice of a shareholder derivative settlement, but rather provides for notice only "in the manner that the court orders." Because no individual claims are at stake, and because a direct notice program would be so costly as to swallow up the benefits of many derivative settlements, notice of dismissal of derivative settlements under Rule 23.1 by publication only is appropriate.

comment upon the Settlement.  This ensures Current Rayonier Stockholders have the opportunity to be heard about the sufficiency of the Settlement, if they choose.

Thus, the form and manner of the proposed Notice to Current Rayonier Stockholders constitutes the best notice practicable under the circumstances and satisfies the requirements of Rule 23.1 and due process.

## V.   PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, Plaintiff requests that the Court establish dates by which the Notices will be published and by which Current Rayonier Stockholders may comment on the Settlement, and a date for the Settlement Hearing.  As set forth in the Preliminary Approval Order, Plaintiff proposes the following schedule:

| | |
|---|---|
| Rayonier shall cause a copy of the Notice to be filed with the SEC on a Current Report on Form 8-K | No later than ten (10) calendar days following the entry of the Preliminary Approval Order (the "Notice Date") |
| Rayonier shall cause the Summary Notice to be published one time in *Investors' Business Daily* and shall cause the Stipulation and Notice to be published on Rayonier's website | As soon after the Notice Date as is practicable |
| All papers in support of the Settlement shall be filed with the Court and served upon all parties to the Action | At least thirty-five (35) calendar days prior to the Settlement Hearing |
| Rayonier's counsel shall serve on Stockholders' Counsel and file with the Court proof, by affidavit or declaration, of publication of the Notice and Summary Notice | At least twenty-one (21) calendar days prior to the Settlement Hearing |
| Any objections to the Settlement by Current Rayonier Stockholders shall be filed with the Court and served upon counsel for Rayonier and Plaintiff | At least twenty-one (21) calendar days prior to the Settlement Hearing |
| Any reply papers in support of the Settlement filed with the Court and served upon all parties to the Action | At least seven (7) calendar days prior to the Settlement Hearing |

Plaintiff proposes that the Settlement Hearing be scheduled for at least seventy-five (75) days after the Notice Date.  The Settlement Hearing date can be inserted into Paragraph 3 of the

proposed Preliminary Approval Order.  This schedule, similar to those used in numerous derivative and class action settlements, affords due process to Current Rayonier Stockholders with respect to their rights vis-à-vis the Settlement.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant preliminary approval of the proposed Settlement, approve the proposed form and method of providing notice of the Settlement to Current Rayonier Stockholders, schedule the Settlement Hearing, and grant such other and further relief that the Court may deem to be appropriate.

Dated: April 17, 2018

Respectfully submitted,

**EGGNATZ | PASCUCCI**

*s/ Joshua H. Eggnatz*
Joshua H. Eggnatz
Florida Bar No. 67926
Email: JEggnatz@JusticeEarned.com
Michael James Pascucci
Florida Bar No. 83397
Email: mpascucci@JusticeEarned.com
5400 S University Dr., Ste. 417
Davie, FL 33328-5313
Telephone: 954-889-3359
Facsimile: 954-889-5913

*Local Counsel for Plaintiff*

**THE SHUMAN LAW FIRM**
Kip B. Shuman
Email: kip@shumanlawfirm.com
Rusty Glenn
Email: rusty@shumanlawfirm.com
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 303-861-3003
Facsimile: 303-536-7849

*Counsel for Plaintiff*

**STULL, STULL & BRODY**
Patrick K. Slyne
pkslyne@ssbny.com
Aaron L. Brody
abrody@ssbny.com
6 East 45th Street, 5th Floor
New York, NY 10017
Telephone: 212-687-7230
Facsimile: 212-490-2022

**KESSLER TOPAZ**
   **MELTZER & CHECK, LLP**
Eric L. Zagar
Email: ezagar@ktmc.com
Robin Winchester
Email: rwinchester@ktmc.com
Kristen L. Ross
Email: kross@ktmc.com
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
Facsimile: 267-948-2512

**THE WEISER LAW FIRM, P.C.**
James M. Ficaro (Admitted *Pro Hac Vice*)
Email: jmf@weiserlawfirm.com
22 Cassatt Avenue
Berwyn, PA 19312
Telephone: 610-225-2677
Facsimile: 610-408-8062

**ROBBINS ARROYO LLP**
Gregory E. Del Gaizo (Admitted *Pro Hac Vice*)
Email: gdelgaizo@robbinsarroyo.com
Ashley R Rifkin (Admitted *Pro Hac Vice*)
Email: arifkin@robbinsarroyo.com
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: 619-525-3990
Facsimile: 619-525-3991

*Additional Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 17, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will deliver the document to all counsel of record.

*s/ Joshua H. Eggnatz*_____
Counsel for Plaintiff